**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TAMESHA MEANS,

          Plaintiff,

vs.

                                        Hon. Denise Page Hood

UNITED STATES CONFERENCE OF
CATHOLIC BISHOPS, a not-for-profit              Case No. 13cv14916-DPH-PJK
corporation, STANLEY URBAN, ROBERT
LADENBURGER, and MARY MOLLISON,

          Defendants.

_____/

### PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS URBAN, LADENBURGER, AND MOLLISON'S MOTION TO CHANGE VENUE AND DEFENDANT UNITED STATES CONFERENCE OF CATHOLIC BISHOPS' MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................iii

ISSUES PRESENTED................................................................................. v

INTRODUCTION ...................................................................................... 1

FACTS ...................................................................................................... 2

Parties....................................................................................................... 2

      a.   Plaintiff ........................................................................ 2
      b.   USCCB........................................................................ 4
      c.   Urban, Ladenburger & Mollison ("CHM Defendants").................. 5

STANDARD OF REVIEW ........................................................................ 6

LEGAL ARGUMENT ............................................................................... 8

 I.  VENUE IN THIS DISTRICT IS PROPER BECAUSE A SUBSTANTIAL PART OF THE EVENTS GIVING RISE TO PLAINTIFF'S CLAIMS AGAINST ALL DEFENDANTS OCCURRED HERE. ................................................ 8

II.  A CHANGE OF VENUE IS NOT JUSTIFIED UNDER §1404(a) BECAUSE DEFENDANTS HAVE FAILED TO OVERCOME THE STRONG PRESUMPTION IN FAVOR OF PLAINTIFF'S CHOICE OF FORUM....... 13

A.     Convenience of the parties and witnesses............................................ 15
B.     Location of relevant documents .......................................................... 19
C.     Location of operative facts .................................................................. 20
D.     Trial efficiency .................................................................................... 20

CONCLUSION ......................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

Amphion, Inc. v. Buckeye Elec. Co., 285 F. Supp. 2d 943 (E.D. Mich. 2003) ........7

Audi AG and Volkswagen of America v. D'amato, 341 F. Supp. 2d 734 (E.D. Mich. 2004)). .........................................................................................8

Blane v. American Inventors Corp., 934 F. Supp. 903 (M.D. Tenn 1996) ..............8

Buchanan v. Mertz, No. 2:12-cv-15511, 2013 WL 3387803 (E.D. Mich. July 8, 2013) ...............................................................................................8

Daniel v. Am. Bd. of Emergency Medicine, 428 F.3d 408 (2d. Cir. 2005) .........9,10

Davis v. Snyder, No. 13-cv-14709, 2013 WL 6507336, at *4 (E.D. Mich. Dec. 12, 2013) ................................................................................. 13,16,19

Doe v. New York, No. 10CV1792, 2012 WL 4503409, at *5 (E.D.N.Y. Sep. 28, 2012) ...............................................................................................9

EEOC v. FPM Group, Ltd, 657 F. Supp. 2d 957 (E.D. Tenn. 2009) ........................7

Empl. Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153 (10th Cir. 2010) .........17

First of Michigan Corp. v. Bramlet, 141 F.3d 260 (6th Cir. 1998) ................ 8, 9,11

Flagstar Bank, FSB v. Gulfstream Bus. Bank, Inc., 13-cv-12136, 2013 WL 6017977, at *4 (E.D. Mich. Nov. 13, 2013).........................................14

Flagstar Bank, FSB v. Southern Star Capital, LLC, No. 13-10290, 2013 WL 2635226 at *3 (E.D. Mich. June 12, 2013) .......................................17

Hall v. Miller's Health Systems, Inc., No. 2:13-cv-151, 2012 WL 4713925, at *2 (N.D. Ind. 2012) ....................................................................6

Harhara v. Norville, No. 07-CV-12650, 2007 WL 2336383, at *5 (E.D. Mich. Aug. 15, 2007)..........................................................................16

Langton v. Combalecer, No. 06-11987, 2007 WL 925736, at *2 (E.D. Mich. Mar. 26, 2007) ...................................................................................... 14,16

Leone v. Cataldo, 574 F. Supp. 2d 471 (E.D. Pa. 2008) .....................................9,10
McClamrock v. Eli Lilly & Co., 267 F. Supp. 2d 33 (D.D.C. 2003) .....................17

McQueen v. Harvey, 567 F. Supp. 2d 184 (D.D.C. 2008) .......................................7

Mosby v. Greyhound Lines, Inc., No. 06-13157, 2006 WL 3206069, at *3 (E.D. Mich. Nov. 3, 2006) ..................................................................................15

Nicol v. Koscinski, 188 F.2d 537 (6th Cir. 1951) ........................................... 14, 15

Overland, Inc. v. Taylor, 79 F. Supp. 2d 809 (E.D. Mich. 2000)...........................14

Piper Aircraft Co. v. Reyno, 450 U.S. 235 (1981) .................................................14

PTG Logistics, LLC v. Bickel's Snack Foods, Inc., 196 F. Supp. 2d 593 (S.D. Ohio 2002) ...................................................................................................9

Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc., 626 F.3d 973 (7th Cir. 2010)...................................................................................................20

Steelcase, Inc. v. Smart Technologies, Inc., 336 F. Supp.2d 714 (W.D. Mich. 2004) ...................................................................................7

Thomas v. Home Depot, U.S.A., Inc., 131 F.Supp.2d 934 (E.D. Mich. 2001). 13,15

Uffner v. La Reunion Francaise, S.A., 244 F.3d 38 (1st Cir. 2001).........................9

**Statutes**
28 U.S.C. § 1391 ...............................................................................................6, 11
28 U.S.C. § 1391(b) ................................................................................................19
28 U.S.C. § 1391(b)(1)............................................................................................19
28 U.S.C. § 1391(b)(2)............................................................... 15, 16, 18, 21
28 U.S.C §1332(a)(3)...............................................................................................19
28 U.S.C. §1391(b)(2)....................................................................................... 12, 13
28 U.S.C. §1404(a) ..................................................................................................11
28 U.S.C.A. § 1391 (1993) ......................................................................................14
M.C.L. §600.2051(2) ................................................................ 11, 14, 20

## <u>ISSUES PRESENTED</u>

1. Is venue proper in the Eastern District of Michigan?

   Plaintiff answers: Yes
   Defendants answer: No

2. Have the defendants met their burden of demonstrating that transfer of venue to the Western District of Michigan is warranted?

   Plaintiff answers: No
   Defendants answer: Yes

## **INTRODUCTION**

Contrary to how Defendants may wish to characterize this lawsuit, this is not a medical malpractice case.  Rather, the gravamen of Plaintiff Tamesha Means's complaint is that Defendant United States Conference of Catholic Bishops ("USCCB") negligently drafted and promulgated the Ethical and Religious Directives for Catholic Health Care Services ("Directives"), which prohibits, *inter alia*, medically necessary pregnancy terminations, with the knowledge and intent that all Catholic health care systems, including those in this District, would adhere to said Directives; that Defendants Stanley Urban, Robert Ladenburger, and Mary Mollison, in their capacity as Chairs and former Chairs of Catholic Health Ministries ("CHM"), the unincorporated religious sponsor of a vast healthcare system which operates multiple hospitals, including Mercy Health Partners ("MHP"), are liable for CHM's negligent decision that MHP would adopt and follow these Directives; and that these negligent decisions ultimately resulted in the serious injuries suffered by Ms. Means at MHP.  Because the decision that the hospital would adopt and follow these Directives as its own policy was made in the Eastern District of Michigan, Compl. ¶ 11, and because this decision is a "substantial part of the events . . . giving rise to [Plaintiff's] claim[s]" against all Defendants, 28 U.S.C. § 1391(b)(2), venue is proper in this District.  Defendants' motions should therefore be denied.

## FACTS

### Parties

#### a. Plaintiff

On December 1, 2010, when Plaintiff was only 18 weeks pregnant, her water broke and she began having contractions.  Compl. ¶¶ 13, 16.  She immediately went to the only hospital in her county, Mercy Health Partners ("MHP") – a Catholic health care service in Muskegon, Michigan.  *Id.* ¶ 14-15.  Upon arrival, Plaintiff was given an ultrasound, informed that her pregnancy was dated at 18 weeks and that the fetus still had a heartbeat but was not viable.  *Id.* ¶¶ 16, 19. Plaintiff was also diagnosed with preterm premature rupture of membrane.  *Id.* ¶ 18.  She was then given medicine to ease her pain, discharged from the hospital, and told to return to the hospital for her regularly scheduled doctor's visit, ***eight*** days later.  *Id.* ¶ 25-26.

Plaintiff was not informed that because her water had broken at such an early stage in her pregnancy, there was virtually no chance of fetal survival but a high likelihood of risk to her personal health if she continued the pregnancy.  *Id.* ¶ 21-22.  The option of completing the miscarriage by terminating the pregnancy was also never discussed.  *Id.* ¶ 22.

While at home, Plaintiff was in such severe pain that she was generally unable to eat or sleep.  *Id.* ¶ 31.  Plaintiff also started bleeding and running a fever.

*Id.* ¶ 32-33. Seeking help, Plaintiff returned to MHP the next morning.  *Id.* ¶ 32.

Although the physician who examined Plaintiff already suspected that she had a

significant infection, chorioamnionitis, Plaintiff was sent home again without any

information about her condition or available treatment options.  *Id.* ¶¶ 34-36, 38.

Plaintiff returned to MHP that evening, still in extreme pain.  *Id.* ¶ 41.  MHP

again prepared to discharge her without providing information about her condition

or treatment options.  *Id.* ¶ 42.  As MHP staff prepared the discharge paperwork,

the feet of Plaintiff's fetus breeched her cervix and she began to deliver. *Id.* ¶43.

The baby died a few hours later.  *Id.* ¶ 45.  The placental pathology report revealed

that Plaintiff had contracted two significant infections after her water broke that

threatened her health, acute chorioamnionitis and acute funisitis.  *Id.* ¶ 47-49.

In 2013, a public health researcher working on a federally funded project

discovered that several women who miscarried before their fetus attained viability

had not been offered the option of pregnancy termination at MHP.  *Id.* ¶ 54.

Plaintiff was one of those women.  *Id.* ¶ 56.  When the researcher discussed this

issue with a MHP administrator, the researcher was informed that the care given to

Plaintiff was proper because Defendant USCCB's Directives prohibited MHP from

terminating Plaintiff's pregnancy.  *Id.* ¶ 57.

### b. USCCB

In 2009, Defendant USCCB, a not-for-profit corporation headquartered in Washington, D.C., *Id.* ¶ 6, published the Fifth Edition of its Ethical and Religious Directives for Catholic Health Care Services, *Id.* ¶ 60. Directive 5 requires all Catholic health care services to "adopt these Directives as policy" and "require adherence to them within the institution as a condition for medical privileges and employment." *Id.* ¶ 62. Directive 45 prohibits abortion, defined as the "directly intended termination of pregnancy before viability or the directly intended destruction of a viable fetus," in all circumstances. *Id.* ¶ 67. This Directive also instructs Catholic health care services not to provide information about pregnancy termination procedures. *Id.* ¶ 69-70.[1]

USCCB does not, and cannot, dispute that it publishes the Directives with the knowledge and intent that the Directives be adopted in full by Catholic health care services. *Id.* ¶71. Further, as its own submissions make plain, USCCB

---

[1]    While completely irrelevant to venue, USCCB asserts that Directive 47 would have permitted a pregnancy termination in Plaintiff's situation. *See* USCCB Br., Ex. C, Hunt Aff. ¶40. Plaintiff vigorously disputes this assertion and, indeed, it is contradicted by USCCB's own statement. *See* Ex. A (statement from USCCB explaining that under its Directives a direct abortion to protect the health of the woman is not allowed in situations where the pregnancy itself causes the threat to the woman's health, as in the case with Plaintiff). Additionally, Directive 27, cited by the CHM defendants to suggest the Directives require patients to be informed about all treatment options, CHM Br. at 3 n.2, in fact only requires Catholic health care services to provide information about treatment options that are deemed "morally legitimate." *See* Compl. ¶ 65; USCCB Br., Ex. C at 19.

"recommend[s] [the Directives] for implementation by the diocesan bishop." *See*

USCCB Br., Ex. C at 10.  As intended and foreseen by USCCB, its Directives are

adopted by individual Catholic bishops and dioceses throughout the country,

including those covering the Eastern District of Michigan, for mandatory

implementation at Catholic health care institutions.  *See, e.g.*, Ex. C (documenting

adopting of Directives by Diocese of Lansing which includes 6 counties in the

Eastern District of Michigan); 28 U.S.C. § 102. [2]

### c.  Urban, Ladenburger & Mollison ("CHM Defendants")

Defendant Stanley Urban is the current chair of Catholic Health Ministries

("CHM"),  *Id.* ¶ 73, and Defendants Robert Ladenburger and Mary Mollison were

the Chairs of CHM in 2010 and 2009, respectively, *Id.* ¶ 80-81.  CHM is an

unincorporated foreign entity based in the Eastern District of Michigan.[3]  Because

CHM is not incorporated, its members, including Defendants Urban, Ladenburger,

and Mollison, are CHM's representatives for the purposes of litigation and are

liable for the decisions CHM made during their membership.  *See*

Mich.Comp.Laws Ann. § 600.2051(2) (West 2014).

---

[2] While Plaintiffs have every reason to think that the Diocese of Detroit has
similarly adopted the Directives, at this early stage of the litigation Plaintiffs have
not yet obtained documentation of that adoption.

[3] Upon information and belief, at all relevant times in this matter, CHM was based
in either Novi, MI or Livonia, MI, both cities in the Eastern District of Michigan.
*See* Ex. D at 3 (listing CHM's location as Novi, MI).

CHM is the religious sponsor of Trinity Health ("Trinity"), a healthcare system headquartered in Livonia, Michigan that operates multiple hospitals, including MHP.  Compl. ¶¶ 82, 88.  As the religious sponsor of the healthcare system of which MHP is a part, CHM has the authority to approve matters that affect MHP's Catholic Identity, such as healthcare policies related to pregnancy termination.  *Id.* ¶¶ 91, 116.  Pursuant to this authority, CHM made the decision in the Eastern District of Michigan that MHP would adhere to USCCB's Directives. *Id.* ¶ 11.  In 2009, Defendant Mollison implemented this decision when she signed CHM's amended by-laws that require the hospitals it sponsors to follow USCCB's Directives.  *Id.* ¶ 86; Ex. B. That same year, Trinity amended its articles of incorporation to require it, as well as MHP, to conduct its activities "in a manner consistent with" USCCB's Directives.  *Id.* ¶ 91-92.

## **STANDARD OF REVIEW**

A motion to transfer venue under 28 U.S.C. §1404(a) is distinct from a motion to dismiss for improper venue under F.R.C.P. 12(b)(3).  *Blane v. Am. Inventors Corp.*, 934 F. Supp. 903, 905-06 (M.D. Tenn. 1996); *Hall v. Miller's Health Sys., Inc.*, No. 2:12-cv-151, 2012 WL 4713925, at *2 (N.D. Ind. June 12, 2012).  The CHM Defendants have filed a motion to change venue on the grounds that venue is improper under 28 U.S.C. § 1391, or alternatively because the Eastern District of Michigan is an inconvenient forum, *see* 28 U.S.C. § 1404(a).  Defendant

USCCB has concurred in the CHM Defendants' motion to change venue and also filed a separate 12(b)(3) motion that seeks the additional relief of being dismissed from this case due to improper venue.

Defendant has the burden of establishing that venue is improper under F.R.C.P. 12(b)(3). *Amphion, Inc. v. Buckeye Elec. Co.*, 285 F. Supp. 2d 943, 945 (E.D. Mich. 2003).[4] Although "a court may examine facts outside the complaint, [it] must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *EEOC v. FPM Group, Ltd.*, 657 F. Supp. 2d 957, 963 (E.D. Tenn. 2009). Further, all allegations in the Complaint must be accepted as true and a defendant "must present specific facts that defeat a plaintiff's assertion of venue to prevail . . . ." *McQueen v. Harvey*, 567 F. Supp. 2d 184, 186 (D.D.C. 2008). When venue is based on 28 U.S.C. § 1391(b)(2), as in this case, a defendant must show that "no substantial part of the events giving rise to this claim occurred in the Eastern District of Michigan." *Amphion Inc.,* 285 F. Supp. 2d at 945.

The moving party also bears the burden of demonstrating that a change of venue is proper under 28 U.S.C. §1404(a). *Steelcase, Inc. v. Smart Techs., Inc.*,

---

[4] Courts are split on whether plaintiff or defendant ultimately has the burden on a motion to dismiss for improper venue. *See Long John Silver's, Inc. v. DIWA III, Inc.*, 650 F. Supp. 2d 612, 629-30 (E.D. Ky. 2009) (discussion of split among courts and authorities on federal practice on which party has the burden on a 12(b)(3) motion). Regardless of which party ultimately has the burden, at a minimum, a defendant must support its venue motion with sufficient evidence to warrant a decision in its favor.

336 F. Supp. 2d 714, 719 (W.D. Mich. 2004).  This a heavy burden that "requires the moving party to show that the balance of factors weighs strongly in favor of transfer."  *Id.*  To satisfy this burden, the Defendant must demonstrate "by a preponderance of the evidence . . . that 'fairness and practicality strongly favor the forum to which transfer is sought.'"  *Buchanan v. Metz*, No. 2:12-cv-15511, 2013 WL 3387803 (E.D. Mich. July 8, 2013)(citing *Audi AG and Volkswagen of Am., Inc. v. D'Amato*, 341 F. Supp. 2d 734, 749 (E.D. Mich. 2004)).

## LEGAL ARGUMENT

I.   **VENUE IN THIS DISTRICT IS PROPER BECAUSE A SUBSTANTIAL PART OF THE EVENTS GIVING RISE TO PLAINTIFF'S CLAIMS AGAINST ALL DEFENDANTS OCCURRED HERE.**

The current statute allows for venue in "***a*** judicial district in which *a substantial part* of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2) (first emphasis added).  The Sixth Circuit has thus explained that "the plaintiff may file his complaint in **_any_** forum where a substantial part of the events or omissions giving rise to the claim arose; this includes any forum with a substantial connection to the plaintiff's claim." *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998) (emphasis added).   Therefore, "[t]he fact that substantial activities took place in district B does not disqualify district A as proper venue as long as 'substantial' activities took place in A, too. Indeed, district A

should not be disqualified even if it is shown that the activities in district B were more substantial, or even the most substantial." *Bramlet*, 141 F.3d at 263 (quoting David D. Siegel, Commentary on the 1998 and 1990 Revisions of Section 1391, Subdivision (a), Clause (2), 28 U.S.C.A. § 1391 (1993)); *see also PTG Logistics, LLC v. Bickel's Snack Foods, Inc.*, 196 F. Supp. 2d 593, 604 (S.D. Ohio 2002) (explaining that in the Sixth Circuit assessment of venue under §1391(b)(2) is "not a comparative analysis of whether one district is better than another or whether more substantial events occurred in one district than in another."). "'When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial[.]'" *Leone v. Cataldo*, 574 F. Supp. 2d 471, 484 (E.D. Pa. 2008) (quoting *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 433 (2d. Cir. 2005). Even a single act within a forum can satisfy the substantiality requirement of §1391(b)(2). *Rooney v. Walt Disney World Co.,* No. Civ.A. 02-12433-GAO, 2003 WL 22937728, at *6 (D. Mass. Nov. 25, 2003) (citing *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42-43 (1st Cir. 2001).

The locus of a principal event underlying an essential element of a plaintiff's negligence claim undoubtedly has a substantial connection to that claim. *See, e.g., Doe v. New York*, No. 10 CV 1792, 2012 WL 4503409, at *5 (E.D.N.Y. Sept. 28, 2012) ("Because . . . two necessary elements of plaintiffs' 'primary claim,' occurred in E.D.N.Y., venue is proper in this district."). In this case, one of the

two central negligent acts that form the basis of Plaintiff's claims occurred in the Eastern District of Michigan.   USCCB published, and CHM adopted, the Directives that prohibited Ms. Means from obtaining appropriate care and information at MHP.   That the Directives would be adopted by CHM in the Eastern District was not only entirely foreseeable, it was intended by USCCB. USCCB specifically directs that all Catholic health care services "adopt these Directives as policy" and "require[s] adherence to them within the institution as a condition for medical privileges and employment."  Compl. ¶ 62; USCCB Br., Ex. C at 15.  In accordance with USCCB's requirements, CHM, in this District, did in fact adopt the Directives and incorporate them into its bylaws.   It was these acts that led to Plaintiff's injuries.  Similarly, CHM's adoption and implementation of policies that required religious doctrine to supersede Plaintiff's health needs, without Plaintiff's consent or knowledge, is a breach of CHM's duty to act in a reasonable manner when creating policies for MHP.

Therefore, CHM's decision in the Eastern District of Michigan to adopt USCCB's Directives as policy for MHP is a "'material act[]'" that not only "'bear[s] a close nexus to the claims,'" *Leone*, 574 F. Supp. 2d at 484 (quoting *Daniel*, 428 F.3d at 433), but also helps establish essential elements of the negligence claims against both defendants – *i.e.*, for USCCB, proximate causation; and for the CHM defendants, breach.   Thus, because a substantial part of the

10

events giving rise to Plaintiff's claims arose in this District, venue is proper here. *Bramlet*, 141 F.3d at 263.

In response, Defendants make essentially three arguments, all of which are easily disposed of.   First, in an attempt to avoid this result, Defendants repeatedly attempt to reframe Plaintiff's claim as one for medical malpractice.  *See* CHM Br. at 1; USCCB Br. at 3.  But it is not.[5]  Rather, it is a negligence case based on the negligent drafting, issuance, and adoption of mandatory healthcare policies by ***non-medical*** individuals.[6]

Second, Defendants repeatedly attempt to characterize the decision of CHM to adopt the Directives as one made by a non-party.  *See* CHM Br. at 6; USCCB Br. at 3.   But again, Defendants are incorrect.   The CHM Defendants are representatives of CHM for litigation purposes.   Under Michigan law, "any unincorporated voluntary association having a distinguishing name may sue or be sued in its partnership or association name, ***or in the names of any of its members designated as such*** or both."  Mich. Comp. Laws Ann. § 600.2051(2) (West 2014)

---

[5] And even if this were a medical malpractice case, pinpointing the lone district where the "single occurrence which directly gave rise to the plaintiffs' action" took place is not the proper standard under the broadened venue statute. *Bramlet*, 141 F.3d at 264.

[6] USCCB asserts that it "did not direct  . . . the application of the [Directives] in Michigan, or elsewhere."  USCCB Br. at 8.  Plaintiff is unclear what it means to "direct . . . the application" of the Directives.  But what is plain, and not disputed by Defendants, is that USCCB publishes the Directives with the knowledge and intent that they will be adopted by all Catholic health care systems, which is precisely what happened when CHM adopted the Directives in this District.

(emphasis added).  Defendants do not dispute that Urban, Ladenburger and Mollison are members of CHM.  Accordingly, the decisions that CHM made are imputed to them for the purpose of this lawsuit, including venue determination. Defendants also do not dispute that CHM's act of directing MHP to adhere to the Directives occurred in the Eastern District of Michigan nor that CHM's act is a substantial part of the events giving rise to plaintiff's claims.[7]

Finally, Defendants argue that because USCCB "is incorporated and has its principal place of business in the District of Columbia" venue is somehow improper in this District.  *See* CHM Br. at 5.  While these facts may have some conceivable (although by no means dispositive) relevance to personal jurisdiction, Plaintiff fails to see how these facts are relevant to the question of whether venue is proper under § 1391(b)(2), which is premised not on where the Defendant resides, but rather asks only if a substantial part of the events giving rise to the claim occurred in the chosen district.

In sum, a substantial part of the events giving rise to Plaintiff's negligence claims against Defendant USCCB and the CHM Defendants – CHM's decision requiring MHP to adhere to the Directives – occurred in the Eastern District of

---

[7] Furthermore, even if the Court were to consider CHM a non-party, which it should not, its adoption of Defendant USCCB's Directives is still part of the intended and foreseeable chain of events that led to Plaintiff's injury and is therefore still a "substantial" part of the events giving rise to Plaintiff's claims as required under 28 U.S.C. § 1391(b)(2).

Michigan.  Venue in this District is therefore proper and Defendants' motions

should be denied.[8]

## II.   A CHANGE OF VENUE IS NOT JUSTIFIED UNDER §1404(a) BECAUSE DEFENDANTS HAVE FAILED TO OVERCOME THE STRONG PRESUMPTION IN FAVOR OF PLAINTIFF'S CHOICE OF FORUM.

Defendants next argue that even if venue is proper under § 1391, a transfer is

nonetheless appropriate under § 1404(a).  *See* CHM Defs.' Br. at 7-9; USCCB's

Br. at 4-6. "A transfer pursuant to § 1404(a) requires that: '(1) the action could

have been brought in the proposed transferee-court;[9] (2) a transfer would promote

the interests of justice; and (3) a transfer would serve the parties' and witnesses'

convenience.'" *Davis v. Snyder*, No. 13-cv-14709, 2013 WL 6507336, at *4 (E.D.

Mich. Dec. 12, 2013) (quoting *Thomas v. Home Depot, U.S.A., Inc.*, 131 F.Supp.2d

934, 936 (E.D. Mich. 2001)). When considering such a motion, a district court may

consider the following factors:

> (1) the convenience of witnesses; (2) the location of relevant
> documents and relative ease of access to sources of proof; (3) the
> convenience of the parties; (4) the locus of the operative facts; (5) the

---

[8] Should the Court decide that it needs more information about CHM's location in the Eastern District of Michigan and/or CHM's connection to USCCB, Plaintiff requests the opportunity to conduct venue discovery prior to the Court's resolution of Defendants' motions.

[9] Plaintiff does not dispute that this case could have been brought in the Western District of Michigan.

availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Id.* at *4 (quoting *Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000)).

At the outset, as this Court has explained,

[T]he Supreme Court has stated that "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum. . . ." Additionally, the Sixth Circuit has noted that "unless the balance is strongly in favor of the defendant the plaintiff's choice of forum should rarely be disturbed."

*Langton v. Combalecer*, No. 06-11987, 2007 WL 925736, at *2 (E.D. Mich. Mar. 26, 2007) (Hood, J.) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981); *Nicol v. Koscinski*, 188 F.2d 537, 537 (6th Cir. 1951)). "The strong presumption in favor of the plaintiff's choice of forum can only be overcome when the other factors in the § 1404(a) analysis clearly point towards an alternative forum." *Flagstar Bank, FSB v. Gulfstream Bus. Bank, Inc.*, 13-cv-12136, 2013 WL 6017977, at *4 (E.D. Mich. Nov. 13, 2013) (citing *Nicol v. Koscinski*, 188 F.2d 537, 537 (6th Cir.1951)).

Here, Defendants have made only speculative and generic arguments in support of transfer and have thus failed to meet this burden. The CHM Defendants

simply assert that several of the *Overland* factors favor transfer of venue without providing any analysis or identifying any facts in support of their argument. *See* CHM Defs.' Br. at 8-9. USCCB likewise fails to meet its burden and simply cites cases—none of which are from this district or even the Sixth Circuit—where courts have transferred a case out of convenience for the witnesses but do not identify any similar facts or considerations that favor transfer here. For these reasons alone the Defendants' motion to transfer under § 1404(a) should be denied. Nonetheless, Plaintiff will respond to the factors Defendants mention in their motions, none of which favor a change of venue.

### A. *Convenience of the parties and witnesses*

Both the CHM Defendants and USCCB assert that the "convenience of the parties and witnesses" favor moving this action to the Western District of Michigan, but fail to identify any facts or evidence to demonstrate why this is so. CHM Defs.' Br. at 9; *see also* USCCB's Br. at 4-6. "While convenience of witnesses is an important factor," *Mosby v. Greyhound Lines, Inc.*, No. 06-13157, 2006 WL 3206069, at *3 (E.D. Mich. Nov. 3, 2006) (quoting *Thomas v. Home Depot, U.S.A., Inc.*, 131 F. Supp. 2d 934, 937 (E.D. Mich. 2001)), "[i]f the moving party merely has made a general allegation that necessary witnesses are located in the transferee forum, . . . the motion to transfer should be denied," 15 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 3851 (4th ed.). When, as here,

Defendants have "fail[ed] to name the witnesses they intend to call for trial," *Langton*, 2007 WL 925736, at *2, or do not explain why any speculative witnesses are the "most important witnesses to this case," *Harhara v. Norville*, No. 07-CV-12650*, 2007 WL 2336383, at *4 (E.D. Mich. Aug. 15, 2007), convenience to witnesses does not favor transfer. Contrary to what the Defendants assert, MHP personnel are not the most important witnesses in this action. *See* CHM Defs.' Br. at 9 n.3; USCCB's Br. at 5-6 n.2. Indeed, neither they nor MHP are even defendants in this matter. As explained *supra*, this is not a medical malpractice suit.

Notably, in this case, changing venue would not alleviate travel burdens for any of the Defendants. All Defendants reside outside the state and must travel to Michigan when this litigation necessitates their appearance. Any marginal convenience of flying into Grand Rapids, rather than Detroit, is not sufficient to satisfy Defendants' burden. Indeed, not only did Defendants fail to explain why flying into Grand Rapids would be more convenient than flying into Detroit, but it is also difficult to imagine why that would be true, as Detroit's international airport is by far a larger airport hub with more daily flights to different cities. *Cf. Davis*, 2013 WL 6507336, at *4 ("the likelihood that the Defendants or other witnesses may be inconvenienced by having to travel to Detroit, Michigan from Lansing, Michigan instead of traveling from Lansing, Michigan to Grand Rapids, Michigan

16

appears slight."); *Estrella*, 2013 WL 6631545, at *3 ("the inconvenience of having to travel from Massachusetts to Michigan is not significant enough to overcome the preference for Plaintiff's choice of venue").

Defendant USCCB also argues that transfer may be appropriate when there are witnesses in the transferee venue who reside outside the subpoena power of the Plaintiff's chosen forum. USCCB's Br. at 5-6. However, USCCB fails to explain why this is the case here. Specifically, USSCB has failed to "identify the witnesses and their locations," to "indicate the quality or materiality of their testimony," or to "show that any such witnesses [would be] unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary." *Empl. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010) (citation and quotations omitted); *see also Flagstar Bank, FSB v. Southern Star Capital, LLC*, No. 13-10290, 2013 WL 2635226 at *3 (E.D. Mich. June 12, 2013) (denying motion to transfer based on convenience to nonparty witnesses, in part, because defendants did not "submit[] any evidence, in the form of affidavits or documents" to support their contention that nonparty witnesses would have to be located and compelled to appear, and "[did] not specify who these individuals are or what their role was."); *McClamrock v. Eli Lilly & Co.*, 267 F. Supp. 2d 33, 38 (D.D.C. 2003) ("While potential witnesses who work in this district will be outside the compulsory reach of a North Carolina district court,

plaintiff does not allege that the non-party witnesses who work in this district will refuse to appear for depositions and at the trial if this matter is transferred to North Carolina, or that their testimony cannot be secured by other means.").

Further, contrary to what Defendants argue, as explained *supra*, Plaintiff's negligence claim is focused on USCCB's promulgation of the Directives and CHM's subsequent adoption of those Directives. Thus, the physicians and staff at the hospital where Plaintiff was treated are not the principal witnesses in this case. *See* CHM Defs.' Br. at 9 n.3; USCCB's Br. at 5-6 n.2. Rather, the more important witnesses are CHM members and others who can attest to CHM's decision to adopt the Directives and enforce them in its hospitals. Because CHM is based in the Eastern District of Michigan, those witnesses are likely to be located, or locatable, within this District. Additionally, because the members of CHM are the same members as Trinity's Board of Directors, Compl. ¶ 93, these witnesses are accustomed to traveling to the Eastern District of Michigan, the District where Trinity is located.[10] If this case were transferred to the Western District, witnesses that are central to Plaintiff's negligence claim would be outside of that court's subpoena power. Defendants have thus failed to demonstrate that a "preponderance

---

[10] Further, to the extent that testimony from physicians and hospital staff employed by MHP will be required at trial, because MHP is a subsidiary of Trinity (which resides in this District) this Court could issue a subpoena to Trinity requiring the appearance of certain employees of MHP.

of the evidence" favors transfer due to the convenience for the parties and witnesses.

### B. Location of relevant documents

The CHM Defendants next argue that the location of relevant documents, particularly Plaintiff's medical records, warrants a change of venue. *See* CHM Defs.' Br. at 9. This is not a complex case with hundreds of thousands of documents.  Plaintiff's medical records amount to less than a few hundred pages. And, at any rate, "[m]odern photocopying technology and electronic storage deprive this issue of practical or legal weight, and the location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing document[s]." *Davis*, 2013 WL 6507336, at *5 (citations and quotations omitted); *see also Estrella*, 2013 WL 6631545, at *3 ("Defendant's argument regarding access to documentary evidence is unavailing . . . . Any documents in Defendant's possession that are relevant to Plaintiff's transaction are discoverable and able to be shared electronically."). And even if hard copy documents were to be physically produced, it is unclear why sending Plaintiff's medical records to Defendants' counsel in this case (the offices of whom are all in the Eastern District of Michigan) or to the Defendants (who all live outside Michigan), would support moving the case to the Western District of Michigan. Further, since a key part of Plaintiff's cause of action is CHM's decision to adhere to Defendant USCCB's

Directives, which took place in the Eastern District of Michigan, documents reflecting that decision-making process would also be in this District. Thus, the location of documents does not support Defendants' motion.

### C. Location of operative facts

Failing to understand the theory of Plaintiff's suit, the CHM Defendants repeatedly argue throughout their motion that the operative facts in this case occurred in the Western District. *See* CHM Defs.' Br. at 6-9. As explained, *supra*, this litigation is a negligent policy suit, not a medical malpractice suit. Thus, the operative facts relate to the promulgation and adoption of the negligent policies. Defendants have not disputed that the adoption of these negligent policies took place in this District. Accordingly, the factor does not favor transfer.

### D. Trial efficiency

Finally, the CHM Defendants assert that "trial efficiency and the interests of justice" support transfer of venue, without elaborating as to why this is so. *See* CHM Defs.' Br. at 9. Defendants have failed to identify any reason to question the expediency with which this Court will adjudicate this matter. Nor have Defendants produced any evidence comparing the dockets and capacity of the Eastern and Western Districts. *See Research Automation, Inc. v. Schrader-Bridgeport 'Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) ("The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the

court system. For this element, courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums.") (citation omitted). Therefore, the interests of justice do not warrant a change of venue in this action.

Based on the foregoing, the Court should find that Defendants have not met their burden of demonstrating that a transfer to the Western District of Michigan is warranted and deny their motion to change venue.

## <u>CONCLUSION</u>

Wherefore Plaintiff respectfully requests that this Court deny Defendants Urban, Ladenburger and Mollison's Motion to Change Venue as well as Defendant USCCB's Motion to Dismiss for Improper Venue.

Respectfully submitted,

/s/ Brooke A. Merriweather-Tucker
Brooke A. Merriweather-Tucker
Daniel S. Korobkin (P72842)
Michael J. Steinberg (P48085)
Kary L. Moss (P49759)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6823
btucker@aclumich.org
dkorobkin@aclumich.org
msteinberg@aclumich.org

/s/ Louise Melling
Louise Melling
Jennifer Dalven
Alexa Kolbi-Molinas
Jennifer Lee
American Civil Liberties Union
Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2633
lmelling@aclu.org
jdalven@aclu.org
akolbi-molinas@aclu.org
jlee@aclu.org


/s/ Don Ferris
Don Ferris (P26436)
Heidi Salter-Ferris (P41481)
Cooperating Attorneys, American Civil
Liberties Union Fund of Michigan
Ferris & Salter, P.C.
4158 Washtenaw Ave.
Ann Arbor, MI 48108
(734) 677-2020

Attorneys for Plaintiff

Dated:  March 7, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2014 I filed the foregoing document through the electronic filing system and that the ECF clerk will electronically serve all counsel through the electronic filing system.

/s/ Brenda Bove