UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMESHA MEANS

      Plaintiff,

v.

UNITED STATES CONFERENCE OF
CATHOLIC BISHOPS, a not for profit
corporation, STANLEY URBAN,
ROBERT LADENBURGER, and
MARY MOLLISON,

      Defendants.

_____/

Case No.  13-CV-14916
Honorable Denise Page Hood

**Proof of Service**

The undersigned certifies that a copy of the foregoing **Memorandum Opinion and Order** was served on the attorneys and parties of record herein by electronic means or U.S. Mail on April 1, 2015

        s/LaShawn Saulsberry
        Case Manager

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANTS' (URBAN, LADENBURGER
AND MOLLISON) MOTION TO TRANSFER VENUE**

This matter is before the Court on Defendants Stanley Urban's, Robert Ladenburger's, and Mary Mollison's Motion to Transfer Venue, filed on January 31, 2014 and Defendant United States Conference of Catholic Bishops' Motion to Dismiss for Improper Venue filed on March 7, 2014. This case concerns a negligence action by Tamesha Means, Plaintiff, against the Defendants for allegedly promulgating and implementing directives that caused the Plaintiff to suffer trauma and harm at a Catholic hospital. The question before the Court is whether the action should be removed from this Court to the United States District Court for the Western

District of Michigan pursuant to 28 U.S.C. § 1391(b)(2) or in the alternative under 28 U.S.C. § 1404(a). The Court holds that the action should be transferred to the United States District Court for the Western District of Michigan because venue in this Court is improper under §1391(b)(2) and also that the case should be transferred pursuant to §1404(a).

## I.    Background

The Complaint before this Court alleges that Plaintiff, a resident of Muskegon County, Michigan, became pregnant in the summer of 2010. (Comp., ¶ 12) On December 1, 2010, Plaintiff's water broke and she began having contractions. (Comp., ¶ 13) Subsequently, the Plaintiff went to Mercy Health Partners ("MHP"), a Catholic hospital, located in Muskegon County, Michigan for treatment. (Comp., ¶ 14)

After MHP staff examined her, Plaintiff alleges she was not informed that her fetus would either not be born alive or would be born alive and die shortly thereafter. (Comp., ¶ 20) Further, Plaintiff alleges that MHP did not inform her about the serious risks to her health if she attempted to continue the pregnancy, nor did MHP raise or discuss the option of terminating her pregnancy and that the fetus she was carrying had almost no chance of survival. (Comp., ¶ 22) Additionally, Plaintiff alleges that MHP did not inform her that MHP's policy does not permit it to help Plaintiff complete the miscarriage as long as there is a fetal heartbeat or that if she desired to

terminate her pregnancy she would have to go to another hospital. (Comps., ¶ 23-24) Plaintiff claims MHP did not give her any other options for treatment. (Comp., ¶ 29)

On December 2, 2010, the Plaintiff returned to MHP. (Comp., ¶ 32) Again, Plaintiff alleges that MHP did not inform her of the extremely low likelihood that the fetus would survive or of the risks of injury or death that she faced if she attempted to continue her pregnancy, nor explain the option of ending the pregnancy. (Comps., ¶ 34-36) Plaintiff alleges that at the time MHP sent her home, Plaintiff's treating physician suspected she had chorioamnionitis but MHP did not inform her of this possible infection. (Comp., ¶ 38)

On the night of December 2, 2010, Plaintiff returned to MHP. (Comp., ¶ 41) Plaintiff alleges that MHP did not inform her of the very low chance that the fetus would survive, the risks to her health of continuing her pregnancy, or the medically appropriate treatment of terminating her pregnancy; instead, MHP prepared to discharge her. (Comp., ¶ 42) While Plaintiff was waiting to be discharged, she began to deliver and the feet exited the cervix. (Comp., ¶ 43) Plaintiff gave birth at approximately 12:13 a.m. on December 3, 2010. The baby died after only about two and a half hours. (Comp., ¶ 44)

The United States Conference of Catholic Bishops ("USCCB") is a not-for-profit corporation incorporated in the District of Columbia. (Comp., ¶ 6) On

November 17, 2009, USCCB published the Fifth Edition of the Ethical Religious Directives for Catholic Health Care Services. (Comp., ¶ 60) USCCB states that the Directives "address the sponsors, trustees, administrators, chaplains, physicians, health care personnel, and patients or residents of [institutionally based Catholic] institutions and services." (Doc. 17-5 Pg. 12). Defendant Stanley Urban, a resident and citizen of the State of Pennsylvania, is the current Chair of Catholic Health Ministries, and Defendants Robert Ladenburger, a resident and citizen of the State of Colorado, and Mary Mollison, a resident and citizen of the State of Wisconsin, are former Chairs of Catholic Health Ministries ("CHM"), an unincorporated foreign entity. (Comps., ¶ 7-9) CHM is the Catholic sponsor of MHP. (Comp., ¶ 88) The Plaintiff brought a negligence action against the Defendants for their alleged roles in promulgating the Directives and directing MHP to adhere to them. Specifically, Plaintiff alleges that MHP's adherence to the Directives caused her injury.

## II.     Analysis

### A.     Motion for Change of Venue under 28 U.S.C. §1391

#### 1.     Standard of Review

In a diversity jurisdiction case, venue is determined according to 28 U.S.C. §

1391(b), which provides:

> (b) Venue in general. A civil action may be brought in:
> (1) a judicial district in which any defendant resides, if all
> defendants are residents of the State in which the district is
> located; (2) a judicial district in which a substantial part of
> the events or omissions giving rise to the claim occurred, or
> a substantial part of the property that is the subject of the
> action is situated.

28 U.S.C. § 1391(b). Venue may be proper in more than one judicial district under

section 1391. *Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000).

In cases with multiple defendants, venue must be proper with respect to all defendants.

*IA, Inc. v. Thermacell Technologies, Inc.*, 983 F. Supp. 697, 700 (E.D. Mich. 1997).

If an objection to venue is raised, Plaintiff bears the burden of establishing that venue

is proper. *Overland, Inc*, 79 F. Supp. 2d. at 811. In this case, Plaintiff claims venue is

proper in the Eastern District of Michigan under 28 U.S.C. § 1391(b)(2). ¶11. (None

of the Defendants reside in the Eastern District of Michigan.) Therefore, Plaintiff

bears the burden of establishing that a substantial part of the events or omissions

giving rise to the lawsuit occurred in the Eastern District of Michigan. The test for

determining venue under section 1391(b)(2) concentrates on the location of the "events or omissions giving rise to the claim." *Domino's Pizza v. Caribbean Rhino, Inc.*, 453 F. Supp. 2d 998, 1006 (E.D. Mich. 2006) (quoting 28 U.S.C. 1391(b)(2)). More specifically, this Court has stated that in tort actions, "'when determining whether a substantial part of the events or omissions giving rise to the plaintiff's claim occurred or did not occur' in a particular district for purposes of 1391(b)(2), 'the facts that courts focus on include the place where the allegedly tortious actions occurred and the place where the harms were felt.'" *Simpson v. Prison Health Services*, 2:09-CVp14354, 2009 WL 3837886 (E.D. Mich. Nov. 12, 2009) (quoting 14D Charles A. Wright, Arthur Miller, Edward H. Cooper, Federal Practice and Procedure 3806.1 (D.D.C. 2009)). Further, the controlling question whether venue is proper is "whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts." *Domino's Pizza*, 453 F. Supp. 2d at 1006 (quoting *Setco Enterprises Corp. v. Robbins*, 19 F. 3d 1278, 1281 (8th Cir. 1994)).

## 2.   Application

In her complaint, the Plaintiff claims that venue is proper in the Eastern District of Michigan under 28 U.S.C. § 1391(b)(2) because "[t]he decision that MHP would adhere to Defendant USCCB's Directives was made by Catholic Health Ministries in the Eastern District of Michigan."  ¶11. Plaintiff has not, however, submitted any

evidence to support those allegations. The Plaintiff claims that USCCB published, and the nonparty CHM adopted, the USCCB directives that precluded Plaintiff from obtaining appropriate medical care in the Eastern District of Michigan. (Doc. 22 Pg. 10). Further, Plaintiff claims CHM is a party in this case under M.C.L.A. §600.2051(2); however, whether CHM is a party to the case is irrelevant because Plaintiff failed to establish the decision that MHP would adhere to USCCB's Directives was made by CHM in the Eastern District of Michigan.

The Plaintiff cites *First of Michigan Corp. v. Bramlet* in her Response: "the plaintiff may file his complaint in any forum where a substantial part of the events or omissions giving rise to the claim arose; this includes any forum with a substantial connection to the plaintiff's claim." (Doc. 22 Pg. 8); 141 F.3d 260, 263 (6th Cir. 1998). However, the facts of this case can be distinguished from *First of Michigan Corp.* In that case, the plaintiffs filed an arbitration action claiming that the defendants, First of Michigan Corporation and Michael Sobol, an investment broker, failed to provide plaintiffs with periodic statements of their IRA's value. *Id.* at 261. After the plaintiffs filed the claim, the defendants successfully moved to dismiss the plaintiffs' case based on improper venue; the court reasoned that "the most substantial event giving rise to plaintiffs' complaint for declaratory relief was the [Plaintiffs'] filing of an arbitrary action, which they initiated in Florida." *Id.* at 262. Further, the court reasoned that

7

because the plaintiffs were not residents of Michigan, and a "substantial part of the events giving rise to the plaintiffs' complaint" did not occur in Michigan, venue in Michigan was improper. *Id.* In its decision, the Sixth Circuit held that the district court applied an incorrect standard: "in dismissing the plaintiff's claim, the district court referred to 'the most substantial event giving rise to' the complaint." *Id.* at 264. Specifically, the circuit court reasoned that the district court based its ruling on venue on a "single occurrence which directly gave rise to the plaintiffs' action, rather than considering whether the forum the plaintiffs chose had a substantial connection to their claim." *Id.* Additionally, the circuit court reasoned that because the majority of the transactions relating to the plaintiffs' investments took place in Michigan or stemmed from contact between the plaintiffs and Sobol, who exclusively worked in Michigan, venue was proper in the district court. *Id.*

Contrastingly, Plaintiff in this case has failed to provide evidence of any proceedings where a decision was made by CHM that MHP would adhere to Defendant USCCB's Directives in the Eastern District of Michigan. In her response, Plaintiff fails to provide any evidence to support this allegation beyond stating that "[u]pon information and belief, at all relevant times in this matter, CHM was based in either Novi, MI or Livonia, MI, both cities in the Eastern District of Michigan." (Doc. 22 Pg. 5). In fact, the Plaintiff seems to acknowledge that she lacks the

8

evidentiary support to carry her argument: "[s]hould the Court decide that it needs more information about CHM's location in the Eastern District of Michigan and/or CHM's connection to USCCB, Plaintiff requests the opportunity to conduct venue discovery prior to the Court's resolution of Defendants' motions." (Doc. 22 Pg. 13).

Based on the evidence provided by the parties, Plaintiff has failed to carry her burden that venue is proper in the Eastern District of Michigan.

### B.     Motion for Change of Venue under 28 U.S.C. §1404

In the alternative that this Court not transfer venue to the Western District of Michigan pursuant to 28 U.S.C. § 1391(b)(2), Defendants requested that this Court transfer to the Western District under 28 U.S.C. § 1404(a).

### 1.     Standard of Review

28 U.S.C. 1404(a) provides, in relevant part: (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C. §1404; *Verve, L.L.C. v. Becton Dickinson & Co.*, No. 01-CV-74134-DT, 2002 WL 551031, at *1 (E.D. Mich. March 29, 2002). Under this statute, district courts have broad discretion to transfer a case to any judicial district where it may have been brought originally. *Amphion, Inc. v. Buckeye Electric Co.*, 285 F. Supp. 2d 943, 947 (E.D. Mich. 2003). "District courts have wide discretion to transfer an action under 28

U.S.C. § 1404(a) in order to prevent waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Grand Kensington, LLC v. Burger King Corp.*, 81 F. Supp. 2d 834, 836 (E.D. Mich. 2000). However, a court "should give deference to a plaintiff's choice of venue." *Id.* "When a defendant moves to change the forum, he must overcome the presumption that the plaintiff has chosen the proper forum." *Id.*

Before granting a transfer to a different district court, the Court must determine whether the action could have been brought in the proposed transferee district. *Domino's Pizza PMC,* 453 F. Supp. 2d at 1007. Once this Court determines that the case could have been filed in the transferee district, this Court considers several factors when deciding whether to transfer a case:

> (1)    The convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forums familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Overland, Inc.*, 79 F. Supp. 2d at 811. Importantly, the moving party is burdened with demonstrating that "fairness and practicality strongly favor the forum to which

transfer is sought." *Audi AG & Volkswagon of Am., Inc. v. D'Amato*, 341 F. Supp. 2d 735, 749 (E.D. Mich. 2004)(quoting *Rowe v. Chrysler Corp.*, 520 F. Supp. 15, 16 (E.D. Mich. 1981)).

### 2.    Proper Venue/Choice of Forum

The first question this Court must answer is whether this action could have been brought in the Western District of Michigan. *Domino's Pizza PMC,* 453 F. Supp. 2d at 1007. Plaintiff does not dispute that this case could have been brought in the Western District of Michigan. (Doc. 22 Pg. 13).

### 3.    Convenience of Witnesses

Regarding the convenience of witnesses, neither party has identified one witness that would be called to trial. In support of their Motion to Transfer, Defendants contend that Plaintiff failed to identify one party or eyewitness likely to be called to trial (Doc. 25 Pg. 5). Further, they argue that the majority of witnesses to be called, Plaintiff and MHP personnel, reside in the Western District. *Id.* On the other hand, Plaintiff contends that members of MHP's staff are not principal witnesses in the case. (Doc 22. Pg. 18). Rather, she argues that important witnesses are "CHM members and others who can attest to CHM's decision to adopt the Directives and enforce them in its hospitals." *Id.* "Because CHM is based in the Eastern District of Michigan, those witnesses are likely to be located, or locatable, within this District."

11

*Id.* Once, again, Plaintiff fails to substantiate this claim with any information. Although neither side has specifically mentioned a particular witness they would likely call to testify, it seems that MHP personnel who treated Plaintiff and allegedly carried out the Directives, in the Western District, would be needed to establish a cause of action. Critically, they would be easily identifiable through a quick reading of Plaintiff's medical records. The convenience of witnesses weighs in Plaintiff's favor and litigation in the Western District of Michigan.

### 4.   Location of Documents/Access of Proof

As to the location of relevant documents, Defendants argue that the location of relevant documents, most notably Plaintiff's MHP medical records, located in the Western District, support transfer of venue. (Doc. 13 Pg. 9). However, Plaintiff argues that relative ease of transferring documents electronically does not warrant a change of venue. (Doc. 22 Pg. 19). Further, Plaintiff argues that because a key cause of action is CHM's decision to adhere to Defendant USCCB's Directives, which she alleges took place in the Eastern District, the documents reflecting this decision would be available in the Eastern District. (*Id.* 19-20). However, the Plaintiff has failed to specifically identify the aforementioned documents and where in the Eastern District they are located. Due to the relative ease by which medical documents may be transferred electronically, this factor appears to only slightly favor the Defendants.

### 5.  Convenience of Parties

Courts generally give substantial reference to a plaintiff's choice of venue. *Grand Kensington, LLC*, 81 F. Supp. 2d at 836. However, a plaintiff's choice of forum is not sacrosanct, and will not defeat a well-founded motion for change of venue. *Thomas v. Home Depot, U.S.A., Inc.*, 131 F. Supp. 2d 934, 937 (E.D. Mich. 2001). The three CHM Defendants are residents of Pennsylvania, Colorado, and Wisconsin. USCCB is a corporation with its principal place of business in the District of Columbia. (Doc. 13 Pg. 2). Plaintiff resides in the Western District of Michigan. *Id.* The Defendants argue that the convenience of the parties supports transfer of venue. (Doc. 13 page 9). Further, Defendants correctly argue that Plaintiff failed to identify one party likely to be called at trial who resides in the Eastern District. (Doc 25. Pg. 5). Conversely, Plaintiff contends that changing venue would not alleviate travel burdens for any of the Defendants because each of them reside outside of Michigan and must travel to this state to appear for purposes of this litigation. (Doc. 22 Pg. 16). Indeed, transferring venue to the Western District would be of more convenience to a single party: the Plaintiff. Of course, the Plaintiff chose the Eastern District as the venue for this case.  As to the convenience of the parties, this factor appears neutral.

### 6.  Location of operative facts

As to the location of operative facts, Defendants argue that the locus of operative facts support transfer of venue. Specifically, Defendants argue "[a]lthough plaintiff speculates that non-party CHM's decision to adopt the Directives took place in this district, all facts concerning duty, breach, causation, and damages lay in the Muskegon area." (Doc. 25 Pg. 6). However, Plaintiff argues that Defendants misunderstood the theory of her suit, believing it to be a medical malpractice suit and not a negligent policy suit, and therefore the operative facts of the case relate to the promulgation and adoption of the negligent policies. (Doc 22. Pg. 20). Nevertheless, Plaintiff has failed to provide evidence of CHM, a disputed party, making a decision that MHP would adhere to Defendant USCCB's Directives in the Eastern District of Michigan.   The only certain location of any operative facts in this case concern Plaintiff's treatment at MHP. Accordingly, the factor favors transfer.

### 7.   Ability to Compel Attendance of Unwilling Witnesses

Regarding the convenience of witnesses, neither party has identified one witness that would be called to trial. However, it is highly likely that members of MHP staff that treated Plaintiff will be called to trial. This Court probably does not have the ability to compel the attendance of unwilling MHP staff witnesses who reside in Muskegon, where most Western District witnesses likely reside; it appears that the members of the staff do not reside or are employed within 100 miles of the Eastern

14

District. *See* Fed. R. Civ. P. 45(c)(1)(A). However, if this case is transferred to the Western District, it appears that court would have the ability to compel any unwilling non-party witness to be called by either party. This factor weighs in favor of Defendants and litigation in the Western District.

### 8. Choice of Forum

Generally, a court "should give deference to a plaintiff's choice of venue." *Grand Kensington, LLC*, 81 F. Supp. 2d at 836. "When a defendant moves to change the forum, he must overcome the presumption that the plaintiff has chosen the proper forum." *Id.* However, this Court has stated that "[w]here the plaintiff does not reside in the chosen forum . . . courts assign less weight to the plaintiff's choice of forum." *Audi AG v. Shoken Conchworks, Inc.*, 04-70626, 2007 WL 522707, at *2 (E.D. Mich. Feb. 13, 2007). Plaintiff does not reside in the Eastern District but is a resident of the Western District, which is Defendants' proposed transferee district. The venue statute §1391 states that a diversity action is generally brought in the district where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). As previously stated, Plaintiff has failed to demonstrate that a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District. However, the record clearly demonstrates that many of the events or

15

omissions relevant to the case occurred in MHP, which is located in the Western District. This factor weighs in favor of Defendants and their choice of forum.

### 9.    Efficiency and Interests of Justice

Regarding trial efficiency and the interests of justice, the Defendants claim that those factors support transfer of venue. Specifically, Defendants assert that the "interests of justice" weigh in their favor because they allege the Plaintiff engaged in forum shopping. (Doc. 25 Pg. 6). The Defendants correctly state that Plaintiff did not bring the action in her district, the Western District. *Id.*  The facts fail to demonstrate why the Eastern District is a more appropriate forum than Plaintiff's home district. The only entity that is located in the Eastern District is CHM. Importantly, besides the alleged but unsubstantiated claim that the USCCB published and CHM adopted, the USCCB directives, all of the events or omissions relevant to the case, occurred in the Western District. This factor weighs in the Defendants' favor and their choice of forum.

After weighing the factors noted above, the Defendants have carried their burden to show that venue should be transferred to the Western District of Michigan.


### III.    Conclusion

16

Venue is improper in the Eastern District of Michigan under 28 U.S.C. § 1391(b)(2) because Plaintiff failed to establish that a substantial part of the events or omissions giving rise to the lawsuit occurred in the Eastern District. The Defendants have carried the burden of demonstrating that venue should be transferred to the Western District of Michigan under 28 U.S.C. § 1404(a).

Accordingly,

IT IS ORDERED that the Motion for Change of Venue **(Document #13)** filed by Defendants under 28 U.S.C. § 1391(b)(2), or in the alternative under 28 U.S.C. § 1404(a) is GRANTED.

IT IS FURTHER ORDERED that the Motion to Dismiss **(Document #23)** is MOOT, given that the Court has granted the Motion to Change Venue.

IT IS FURTHER ORDERED that the Clerk transfer forthwith this action to the Western District of Michigan, Southern Division.

IT IS FURTHER ORDERED that this action be designated as CLOSED for statistical purposes.

s/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: March 31, 2015

17